# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al*.,<br><br>*Defendants*. | No. 1:25-cv-802-RBW |

### DECLARATION OF JAMES BERGERON

I, James Bergeron, do declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and accurate to the best of my information and belief:

1. I am the Acting Under Secretary of Education at the United States Department of Education ("Education"). I am a duly authorized Custodian of Records, or other qualified witness for Education, located in Washington, District of Columbia. As such, I am fully competent to make the statements contained in this Declaration. I make this declaration based on my personal knowledge and based on information provided to me in my official capacity.

2. As the Acting Under Secretary of Education, my responsibilities include the coordination of major policies, programs, and activities related to Postsecondary Education and Federal Student Aid. These responsibilities include, but are not limited to, ensuring compliance with a revised preliminary injunction Education anticipates the Eastern District of Missouri will issue, based on the February 18, 2025 opinion from the United States Court of Appeals for the Eighth Circuit in *Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025).

1

**Education's IDR Repayment Plans**

3.      Under the Higher Education Act, Education offers federal student loan borrowers a choice of repayment plans established according to varying statutory and regulatory criteria. At issue in this litigation are Education's income driven repayment ("IDR") plans. "IDR" is a blanket term that encompasses income contingent repayment ("ICR") plans and income based repayment ("IBR") plans. There are three ICR plans: "original" ICR, PAYE, and REPAYE (now known as "SAVE"). As detailed in the following paragraphs, Education anticipates that REPAYE/SAVE will soon be enjoined in its entirety. There is only one IBR plan.

**The SAVE Litigation**

4.      In July 2023, Education promulgated a Final Rule that enacted various changes to IDR plans. *Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program*, 88 Fed. Reg. 43,820, 43,827 (July 10, 2023). One of the regulatory changes in the Final Rule was the establishment of the Saving on a Valuable Education ("SAVE") repayment plan, an ICR plan that replaced the REPAYE plan. As a general matter, SAVE altered monthly payment formulas for enrolled borrowers (with the general effect of lowering monthly payments), waived interest in certain circumstances, and provided for a shortened timeline to loan forgiveness.

5.      The Final Rule also enacted regulatory changes whose effects extended beyond SAVE to other IDR plans, including changes affecting the counting of payments made in bankruptcy towards IDR forgiveness (*i.e.*, forgiveness resulting from a borrower's qualifying payments (or the equivalent) while enrolled in an IDR plan), changes affecting the counting of certain forbearances and deferments towards IDR forgiveness, and the treatment of spousal information for all IDR plans, including SAVE. These changes affect all IDR plans, including IBR.

6. The plaintiffs in *Missouri v. Trump* challenged certain SAVE-related provisions of the Final Rule in the Eastern District of Missouri, and obtained a preliminary injunction barring Education "from any further loan forgiveness for borrowers under the Final Rule's SAVE plan." Prelim. Inj. at 1, *Missouri v. Trump*, No. 4:24-cv-00520-JAR (June 24, 2024).

7. The Eighth Circuit issued its decision on cross-appeals of the preliminary injunction on February 18, 2025. The Eighth Circuit's decision instructs the district court to preliminary enjoin the entire July 2023 Final Rule, not only the provisions related to SAVE. *See Missouri*, 128 F.4th at 998-99.

8. To prepare to comply with the broadened preliminary injunction Education anticipates the Eastern District of Missouri will issue, Education needed to revise both its online and paper applications for IDR plans. The online application is an interactive digital interface whose underlying code needed to be changed to remove effects related to the soon-to-be-enjoined provisions of the Final Rule. The online application interface Education used for REPAYE/SAVE was inextricably intertwined with the application for other IDR plans, and thus had to be revised in its entirety, which required access to it to be temporarily disabled.

9. In addition to the technical changes identified above, both the online and PDF (printable) applications were modified to remove references to the REPAYE/SAVE plans, enrollment in which will no longer be permitted due to the Eighth Circuit's opinion. The PDF application also included an income information section for married borrowers filing separately. This information is no longer needed. Consequently, the PDF application needed to be revised and had to be temporarily removed. See Attachment A (Old IDR application form).

3

10. Borrowers who are required to recertify their income and family size to determine their monthly payment amounts under the IDR plans must utilize the online IDR application interface, even if not enrolling in a new repayment plan.

11. In sum, because the online application process for REPAYE/SAVE is inextricably intertwined with the application for other IDR plans, and because the Eighth Circuit's order directed the injunction of provisions that applied to other IDR plans, in order to prepare to comply with anticipated injunction from the Eastern District of Missouri, Education had to temporarily disable the online and paper application process for all IDR plans.

**Payment Plan Applications**

12. On March 26, 2025, Defendants reopened the online application process, with a revised application, for IDR plans. *See* U.S. Dep't of Education, *Income-Driven Repayment (IDR) Plan Request*, https://perma.cc/P8ER-TNN4?type=image (providing link to apply for an IDR plan and for loan consolidation); U.S. Dep't of Education, *Demonstration for Income-Driven Repayment (IDR) Plan Request,* https://perma.cc/4BCP-R2SZ?type=image (demonstration tool showing online application allows for the selection of the IBR, original ICR, and PAYE plans).

13. Education published the PDF versions of the updated IDR form on March 28, 2025. *See* U.S. Dep't of Education, *Income-Driven Repayment (IDR) Plan Request*, https://perma.cc/HR9P-CX9Z. Borrowers can print this form, fill it out manually, and mail it to Education.

**Income and Family Size Recertification**

14. As described in paragraph 10, borrowers who are required to recertify their income and family size must use Education's online interface to do so.

15. Education directed its contracted loan servicers to move the deadline by which all

borrowers who were required to certify their income and family size after the application became temporarily unavailable and are currently enrolled in the original ICR plan, PAYE, or the IBR plan one year into the future. Servicers are already extending the recertification deadline for affected borrowers. Education expects that its servicers will finish implementing the extension for affected borrowers by April 26, 2025.

16. For borrowers currently enrolled in ICR, PAYE, and IBR whose recertification dates were not extended by their recertification deadline and whose monthly payment amounts increased as a result, Education will adjust their monthly payment amount to equal the amount in place prior to their recertification date by May 10, 2025. Borrowers who did not make payments at the higher amount will be placed in an administrative forbearance that will cover the period of delinquency.

**Payment Plan Processing**

17. Education directed its servicers to resume placing borrowers that apply for ICR, PAYE and IBR into their respective plans as soon as possible. At present, based on information provided by servicers, Education expects that servicers will be able to resume doing so by May 10, 2025. Education does not currently have an estimated date for when servicers will have completed processing the backlog of IDR applications. This timeline is due to the servicers' internal procedures. Specifically, before servicers can begin to process applications, they must update the processing rules in their systems according to the terms of their contracts with Education. Servicers are required by contract to follow a Software Development Lifecycle that includes several steps including: drafting system requirements, drafting system design documentation, making programming changes, and testing programming changes.

18. Education expects that by May 10, 2025, servicers will implement the treatment of

spousal information for ICR, PAYE and IBR such that married borrowers filing separate income tax returns or separated from their spouses will have <ins>the</ins> spous<del>eal</del> <del>income</del> counted <ins>in the family size</ins> for the purposes of calculating monthly payment amount under IDR plans, which is a required consequence of the Eighth Circuit's opinion directing a broadened preliminary injunction.

19. Education expects that servicers will start placing borrowers currently enrolled in SAVE that are applying for different IDR plans into the plan of their choice by May 10, 2025. Education does not currently have an estimated date for the completion of this process.

20. Once borrowers apply for any IDR plan, they will be placed in a processing forbearance under 34 CFR § 685.205(b)(9) for up to 60 days, or until the processing of their application is complete, whichever is earlier. Any applications that are pending for over 60 days will be moved into the general administrative forbearance under 34 CFR § 685.205(b)

21. Periods of time spent in processing forbearance will count towards Public Service Loan Forgiveness ("PSLF") eligibility under 34 CFR § 685.219(c)(2)(v)(H). Those periods will not, however, count towards eligibility for forgiveness due to a borrower's enrollment in an IDR plan.

22. Borrowers with 120 months of qualifying employment can use the Public Service Loan Forgiveness Buyback program under 34 CFR § 685.219(g)(6) to count periods of administrative and processing forbearance towards forgiveness.

I declare under the penalty of perjury that the forgoing is true and correct.

Executed on this __th day of April, 2025.

_____
James Bergeron

6