1:25-cv-00802-RBW

Dear Judge Walton,

    Please do not approve the parties' Joint Status Report Disclosing Agreement, filed October 17th in American Federation of Teachers v. Department of Education (25-CV-00802). It fails to address any relief for borrowers on the Save Plan who have been entitled to forgiveness under PSLF since the summer of 2024 when the counting of eligible months was paused, and who have applied ONLY for the PSLF Buyback because of the Department's inability to process IBR applications before the January 1, 2026 tax deadline. We are a sizeable and unique subgroup of the proposed class of Save Plan borrowers facing grave financial risks and we are mentioned explicitly mentioned in the proposed first amended class action complaint. Yet we are not mentioned in the Joint Status Report. Attached is a copy of letter sent to Judge Rosee in the Missouri case that outlines why our subgroup is unique.

    Your Honor, I beg your consideration of our interests which are continuously being overlooked in the various litigation concerning these student loans.



**RECEIVED**
NOV 24 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

July 28, 2025

<u>via Facsimile 314-244-7569</u>
The Honorable Judge John A. Ross
Thomas F. Eagleton U.S. Courthouse
111 S. 10th Street
Courtroom: 12 North
Chambers 2.148
St. Louis, Missouri 63102

RE: <u>State of Missouri et al. v. Trump et al.</u>, Case No. 24-cv-00520-JAR

Dear Judge Ross,

I am writing to you because I am a student loan debtor who is on the Save Plan and have been entitled to forgiveness under the Public Service Loan Forgiveness ("PSLF") Program since last year. I am literally only two months short of receiving forgiveness. And please note, I am not alone.

However, as you may know, the Department of Education ("DOE") and the loan servicers have interpreted this Court's injunction issued last year as prohibiting any action on the accounts of borrowers on the Save Plan including no further counting of the months required for forgiveness, no matter how few they may be. Consequently, there is a subset of borrowers on the Save Plan, which includes me, who were entitled to forgiveness under the PSLF ("PSLF")/Temporary Expanded Public Service Loan Forgiveness ("TEPSLF") programs in 2024 and 2025 and have not yet received it due to the injunction. Further, it is fair to state the circumstances of these borrowers are unique and exceptional because they are not similarly situated to the borrowers-at-large who are on the Save Plan and are years away from forgiveness. Rather, this subset has arguably been unable to exercise their statutory right to forgiveness of their loans due to the pendency of this case which might not be resolved for another couple of years.

Moreover, the circumstances of this subset recently became more dire because DOE and the loan servicers suddenly decided this month to resume in August 2025 the accrual of interest on their loans, despite the injunction's explicit prohibition against it and the fact the type of administrative forbearances currently in place for the Save Plan borrowers suspends the accrual of interest. This new position starkly contrasts DOE's and the servicers' position of refraining from counting any months towards forgiveness, meaning it appears they wish to violate the injunction by imposing interest on loans that should have been forgiven last year, while simultaneously wishing to comply with the injunction by not completing the count required for forgiveness of these same loans. Because imposition of interest likely constitutes a flagrant violation of this Court's injunction and demonstrates the foregoing borrowers' interests are no longer represented in any respect in this case, I decided to write this letter to you.

1

I, also, decided to write this letter because I wish to beg the Court to consider, before rendering a final decision, appointment of a master for the reasons outlined below. A master could manage the accounting and counting of student loan accounts like mine where forgiveness has been substantially delayed since last year. And a master could assure the loans entitled to forgiveness last year are not bundled with other student loans and transferred to another agency without first updating the accounts. Moreover, given the allegations in other court cases of mismanagement of student loans by Mohela and other servicers, appointment of a master may prove more prudent for oversight of the complexities of this subset of loans which are only months away from forgiveness.

The following reasons support appointment of a master:

- The accounting for the loans, which is limited to online viewing, is often incorrect. For instance, my loans have no account numbers and the balances have grown exponentially. Nor does the accounting show any payments made over the years. Whenever I request an accounting, none is provided. When you telephone customer service for the information, their view of your account is bare bones. Borrowers are literally in a black box when it comes to the exact amount owed. There is great concern that if loans with erroneous accounting are transferred to a new agency, deuce is wild in calculating their outstanding balances. Without a master overseeing the accounting for this subset of loans, a transfer could result in a travesty of justice, chaos and unwieldy costs to taxpayers, further delaying forgiveness of the loans;

- Loans have been split up into smaller, separate loans with no reason given. In fact, some are even duplicates. In my case, DOE and Mohela have split my original three loans into five. Only one has been forgiven so far under PSLF. A master could assure the loans and the balances for the Save Plan borrowers comply with the original terms and conditions as agreed and are not the result of accounting errors;

- Neither DOE nor the servicers have the original master promissory notes for many loans. DOE and Mohela have repeatedly told me they do not have the original loan documents for my loans and even questioned why I would need them for the loan that was recently forgiven. A master's assistance in locating the original loan documents prior to any transfer of this subset of loans would facilitate accurate accounting and avoid further confusion and delays for loans. Also, the master promissory note for the loan is an essential document for showing the correct grace period for loans which determines the start date for counting the months required for forgiveness, along with the principal owed and the interest rate;

- Currently, there is great confusion as to whether the months of July and August 2024 should be counted towards forgiveness for borrowers on the Save Plan in light of the date of this Court's injunction. It appears some servicers do count them, while others do not. If those months were counted in my case, my loans would be deemed forgiven as

of August 2024. A master could assist DOE and the servicers in determining which months may be counted, particularly if this Court decides the Save Plan is not illegal retroactively and the forgiveness of loans in 2024 may proceed;

- If the counting for loans that should have been forgiven in 2024 and 2025 is not completed before January 1, 2026 – which is the deadline to avoid paying taxes on a forgiven student loan - borrowers will face dire tax consequences. A master could expedite a prompt resolution for this subset of loans of Save Plan borrowers before the deadline; and

- If the Save Plan is found illegal retroactively, DOE and the servicers should be required to offer borrowers the payment plan they were on before entering the Save Plan, even if the plan has been eliminated or limited, so as to facilitate the counting for loans entitled to forgiveness in 2024 and 2025. The acumen of a master could promptly transition and process these loans, particularly in light of the most recent Status Report filed on July 16, 2025 in a related case (25-CV-802 RBW) stating DOE and servicers have a backlog of over 1.5 million Income-Driven Repayment applications and 65,000 Buy Back requests that have not yet been processed which demonstrates switching to another income-driven plan is not a readily available option. Without a master at the helm at least guiding any change in a payment plan for the subset of borrowers who are only a few months away from forgiveness, the transition of these loans to a legal payment plan could become unduly complicated and forgiveness could take years, particularly given DOE's staff shortages and the prospect of the imminent transfer of the student loan portfolio.

I beg the Court that, without the appointment of a master, the subset of borrowers who are currently on the Save plan and only a few months shy of forgiveness will suffer irreparable harm that substantially outweighs any harm alleged by the parties in this case. Without question, they will likely be disproportionately and adversely impacted by this Court's final decision, particularly if the Save Plan is deemed illegal retroactively and their loans are transferred without a prompt resolution of forgiveness.

I, also, beg the Court to permit counting of the months on the Save plan prior to the date of your final decision. Otherwise, none of the months between the date of your injunction and the date of your final decision will count towards loan forgiveness, particularly given the enormous backlog of applications DOE and the servicers are facing and any prospect of reducing those numbers in the near future, which leaves this subset of borrowers stuck on the Save Plan.

Thank you for your kind consideration as I know how busy your Chambers is. However, any help in resolving these issues would be greatly appreciated because of the grave concern the critical issues unique to our loans are being overlooked.

3