UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION
OF TEACHERS, *et al.*,

        Plaintiffs,

  v.                                     No. 1:25-cv-802-RBW

U.S. DEPARTMENT OF EDUCATION,
*et al.*,

        Defendants.

## STATUS REPORT

Pursuant to the Court's order of October 23, 2025, ECF No. 55, the United States Department of Education ("ED") and Linda McMahon (in her official capacity as Secretary of Education) hereby provide the following information, which was provided to undersigned counsel by the Department of Education:

**I.**     **Data Tables**

| Income-Driven Repayment ("IDR") Applications | |
|---|---|
| IDR applications received during December 1-31, 2025 | 258,465 |
| IDR applications decided (approved or denied) during December 1-31, 2025 | 277,131 |
|    -   Approved | 242,655[1] |
|    -   Denied | 34,476 |
| IDR applications pending as of December 31, 2025 | 734,221 |
| IDR plan discharges during December 1-31, 2025 | 3,400 |
|    -   Discharges under the Income-Based Repayment Plan | 3,400 |
|    -   Discharges under the Original Income Contingent Repayment Plan | 0[2] |
|    -   Discharges under the Pay As You Earn Plan | 0[2] |

| Public Service Loan Forgiveness ("PSLF") Buyback Applications | |
|---|---|
| PSLF Buyback applications received during December 1-31, 2025 | 5,090 |
| PSLF Buyback applications decided (approved or denied) during December 1-31, 2025 | 1,930 |
| - Approved | 1,690[1][3] |
| - Denied | 190[3] |
| - Closed without decision due to missing information | 50[3] |
| PSLF Buyback applications pending as of December 31, 2025 | 83,370 |
| PSLF discharges during December 1-31, 2025 | 9,400[4] |

**II.**     **Notes to Data Tables**

*(1) IDR plan applications approved or denied.* Defendants acknowledge that the percentage of IDR plan applications approved (87.560%) is very similar to the percentage of PSLF Buyback applications approved (87.565%). Defendants re-verified and reaffirmed the reported totals. Defendants believe the similar percentages are a coincidence.

*(2) Original ICR and PAYE discharges.* Defendants note that no loans were discharged under either the Income Contingent Repayment ("Original ICR") plan or the Pay As You Earn ("PAYE") plan in both November and December 2025. For the following technical reasons, Defendants have been cancelling loans for Income-Based Repayment ("IBR") borrowers who reached eligibility for cancellation prior to April 2025. However, the Original ICR and PAYE plans remain in effect, and ED reaffirms its commitment to cancel eligible loans under these plans "as long as these plans remain in effect." *See* Order of October 23, 2025 at 2, ECF No. 55.

There are two independent barriers to processing Original ICR and PAYE cancellations at this stage, and ED is working to resolve them. The first is technical and the second is judicial.

2

*First*, as Defendants explained in last month's status report, the National Student Loan Data System ("NSLDS") is "currently programmed to check eligibility for discharges under the Income-Based Repayment plan, but not any other IDR plans. ED is working on the programming for the other IDR plans, and anticipates that starting in February 2026, NSLDS will check eligibility on a regular basis (every other month)." Status Report of Dec. 15, 2025 at 5, ECF No. 58. To clarify, ED expects that the loan servicing companies will resume mailing eligibility letters for Original ICR and PAYE after the NSLDS systems are updated in February. In addition, because ED eligibility letters provide an opt-out period to decline loan forgiveness, ED expects a delay between when eligibility letters are mailed and when cancellations occur. *Id.* at 3.

*Second*, in *Missouri v. Trump*, the U.S. District Court for the Eastern District of Missouri enjoined the SAVE Plan Final Rule, including the revised criteria for a qualifying forbearance and/or deferment for IBR, Original ICR, and PAYE. *See generally id.* at 4 n.2. In response, Defendants focused on processing discharges for borrowers who became eligible for loan cancellation before April 2025, the month the district court expanded its injunction, while evaluating the most effective way to resume discharges for the borrowers who would have become eligible under the SAVE Plan Final Rule criteria after the date of the injunction. Currently, the only cancellations taking place are for IBR borrowers who became eligible before April 2025. The same time limitation would apply to Original ICR and PAYE, but as described above, there are independent technical roadblocks to cancellations under those plans for now.

In December, the parties in *Missouri v. Trump* settled the case on terms that were intended to minimize disruption to the loan discharge process. The parties agreed that the SAVE Plan Final Rule's qualifying forbearance/deferment criteria should be restored, and petitioned the district court to that end. *See* Joint Motion for Entry of Final Judgment at 3, *Missouri v. Trump*,

3

No. 4:24-cv-520-JAR (E.D. Mo. filed Dec. 9, 2025), ECF No. 91. However, the district court's preliminary injunction remains in place, and until the court dissolves that injunction as part of entering final judgment, ED cannot apply the SAVE Plan Final Rule's qualifying criteria to loans that (under those currently-enjoined criteria) would have become eligible for cancellation after April 2025. If and when the relevant part of the injunction is dissolved, ED will be able to begin cancelling loans for all borrowers—regardless of when they became eligible for cancellation—without first having to (for example) re-code its tracking systems to restore the pre-SAVE Plan Final Rule criteria. In addition, given the parties' agreement in *Missouri v. Trump*, it would not make sense for ED to re-code its systems to the old criteria, only for the district court to then grant the joint motion and potentially trigger a further round of re-coding.

*(3) PSLF Buyback applications approved or denied.* Defendants disclose the number of PSLF Buyback approvals and denials for the month of December 2025, subject to the caveats that the PSLF Buyback database is dynamic; approval/denial data is inherently subject to change; and FSA can only see an application's current status, not past statuses. For example, an application might be closed in December because the application package was incomplete, but then reopened and approved in January after the application package is supplemented with the necessary information. FSA would not log the December closure and January approval as separate events in the database. As such, whether the aforementioned application would be categorized as an approval or a denial would depend on the particular day FSA tabulates the approval/denial figures. In plain English, if FSA tabulates approval and denial figures on December 31 and again on January 15, the numbers might be different. Here, FSA pulled approval/denial data several days after December 31 due to the holiday season. FSA does not know what the figures would have been if FSA had pulled the data on December 31.

As with the other PSLF statistics provided by Defendants, the PSLF Buyback approval/denial numbers are rounded.

*(4) PSLF Buyback discharges.* Federal Student Aid does not directly track PSLF Buyback discharges. Instead, FSA receives discharge reports from loan servicing companies, which are the entities that actually implement the discharges. Because the companies report PSLF discharges on a weekly (not daily) basis, it normally takes up to a week for a discharge to be reported to FSA.

Here, Defendants report discharge data in this proceeding roughly two weeks after the end of the month being reported for. As such, a status report for a given month should accurately reflect that month's discharges. However, if there are delays in reporting certain discharges to ED, that may cause inaccuracies in the numbers ED reports here.

Dated: January 14, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director

*/s/ Winston Shi*
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-880-0387
winston.g.shi@usdoj.gov

*Counsel for Defendants*